**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| COLLETTE JACQUES-SCOTT, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No.: 10-422-LPS/MPT |
| | : | |
| SEARS HOLDING CORPORATION, | : | |
| a Delaware corporation, and | : | |
| SEARS, ROEBUCK AND CO., | : | |
| a foreign corporation, | : | |
| | : | |
| Defendants. | : | |

## <u>REPORT AND RECOMMENDATION</u>

## I.     **Background**

### A.     **Procedural Posture**[1]

This action was initiated on May 20, 2010, via a *pro se* complaint[2] filed by

Collette Jacques-Scott ("plaintiff") against Sears Holding Corp. and Sears, Roebuck and

Co. ("defendants").  The complaint alleged (1) sex discrimination, (2) race

discrimination, (3) hostile work environment, (4) retaliation, (5) slander, (6) libel, (7)

breach of the covenant of good faith and fair dealing, and (8) violation of § 11(c)(2) of

the Occupational Safety and Health Act ("OSHA").

On September 29, 2010, defendants filed a motion to dismiss.[3]  On March 22,

2011, this court issued a report and recommendation to grant defendants' motion with

---

[1] On June 13, 2008, plaintiff filed her claim with the Equal Employment Opportunity Commission ("EEOC"). On February 22, 2010, the EEOC issued a right to sue letter.  *See* D.I. 14 at 1.

[2] D.I. 1 (Complaint).

[3] D.I. 6 (defendants' motion to dismiss).

respect to libel and slander, breach of the covenant of good faith and violation of

§ 11(c)(2) of OSHA.[4]  On August 8, 2011, the Honorable Leonard P. Stark adopted the

March 22, 2011 report and recommendation,[5] leaving only the Title VII claims of gender

and race discrimination, hostile work environment, and retaliation.[6]  Presently under

consideration is defendants' motion for summary judgement on these claims.[7]

## B.    Factual Background

Plaintiff began employment with defendants as a loss prevention manager on

January 28, 2008.[8]  Defendants' employees, Michael Filippone ("Filippone"), district loss

prevention manager, and David Elzey ("Elzey"), store manager, hired plaintiff.[9]  Her

primary work site was the Sear's retail store at the Dover Mall in Dover, Delaware.[10]

Plaintiff was discharged on June 11, 2008.[11]

Her complaint and answering brief[12] outline events which allegedly describe

discrimination and a hostile work environment.[13]  Plaintiff first describes the relationship

of Charles Thompson ("Thompson"), multi-unit loss prevention coach, with another

---

[4] D.I. 14.

[5] D.I. 30.

[6] Although the court acknowledges defendants' argument that plaintiff has not pled race discrimination, she raised racial discrimination before the Delaware Department of Labor ("DDOL").  D.I. 69 at Ex. A).  The court has liberally construed plaintiff's *pro se* complaint as including this claim. Defendants addressed this issue in their briefing, and are not prejudiced by the court's consideration of this claim.  D.I. 69 at 1-2.

[7] D.I. 68.  Plaintiff's pending motion for an extension of time to file her answering brief (in violation of Judge Stark's Memorandum Order dated December 28, 2012 found at D.I. 78) is moot since her answering brief was filed March 6, 2013, six days after it was due.  Plaintiff has filed no less than 10 motions for an extension of time in this matter, which resulted in Judge Stark's order of no further extensions.  D.I. 78.  Briefing on defendants' summary judgment motion is as follows:  D.I. 69 (defendants' opening brief); D.I. 81 (plaintiff's answering brief); and, D.I. 83 (defendants' reply brief)

[8] D.I. 81 at 1; D.I. 69 at 2-3.

[9] D.I. 69 at 2.

[10] *Id.* at 3.

[11] D.I. 81 at 1.

[12] D.I. 81.

[13] Approximate dates or timing when each specific act occurred has not been provided by plaintiff.

employee, Sammantha, when he was a loss prevention coach.[14]  Plaintiff states that

instead of training her, Thompson would "bypass the training and set the closed circuit

television ("CCTV") cameras on Sammantha['s] post and observe her all day,"[15] which is

"a complete violation of Policy" which should have resulted in both parties being

terminated.[16]  Instead, Sammantha was terminated and Thompson was transferred with

higher pay."[17]  After Thompson was transferred, Sammantha was rehired.[18]

    Plaintiff claims Thompson also sexually harassed a loss prevention associate,

Leah, at defendants' Annapolis store.  While at the Annapolis store for training, she

states Thompson would watch Leah, and comment "about her appearance as being

sexy and shapely" to plaintiff.[19]  Plaintiff told Thompson to stop his comments since she

was there for training, "not to watch or [hear] about [Leah]."[20]  Plaintiff reported

Thompson's behavior to district loss prevention coach, Filippone.[21]  She asserts she

"was under attack by defendants [and Thompson] when she refused to fire a [loss

prevention associate, William Skibicki ("Skibicki"),] because [Skibicki] heard about

Leah's sexual harassment claim from another [loss prevention associate/loss prevention

coach] located in another Easter District Store."[22]

    Plaintiff claims despite that all female loss prevention associates, including

---

[14] D.I. 1 at ¶34.
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*  Plaintiff contends Thompson was angered by Leah's rejection of his advances and intended to fire her. According to plaintiff, Filipone decided to fire Leah of alleged claims of an improper discount purchase and "ignored [Leah's] sexual harassment claim against [Thompson]." *Id.*
[21] *Id.*
[22] *Id.* at ¶35.

herself, had completed the required Training Courses for Certification, they were denied
certification,[23] while, all males were certified after completing the required training.[24]
Because women were not certified, they were denied the associated increase in pay
from certification.[25]

Plaintiff claims she suffered verbal abuse by John Bachus ("Bachus"), a black
male, who was lead manager of merchandise pick-up/receiving, and by Tom Lyon
("Lyon"), a white male, lead manager of lawn/gardens. She contends male associates
were rarely sanctioned for offensive behavior towards females associates."[26] Finally,
she argues she was disciplined for conduct for which male associates were not,[27]
generally claiming female employees were subject to "meritless charges for [the] sole
purpose of justifying sanctions, [and] . . . on charges for conduct for which men
associates are not brought up on . . ."[28]

Plaintiff also describes an encounter with Cindy Dayton ("Dayton"), a white
female operation coach for the Salisbury, Maryland store, who "removed Plaintiff from
inventory to an isolated and designated area away from the inventory process"[29]
allegedly because of her race. Plaintiff had been assigned to observe the inventory
process at defendants' Salisbury store on March 9, 2008.[30] She claims she did not

---

[23] *Id.* at ¶24-25.
[24] *Id.*
[25] *Id.* at ¶24.
[26] *Id.* at ¶32. Plaintiff describes two white female associates who were interrogated by Nicholas Glaze, a store coach, behind closed doors. Upon exiting the room, both were crying. In another incident, plaintiff claims a white female employee was forced to sign Eric Smith's, an operational coach, signature on a payroll sheet for fear of being fired. *Id.* at ¶33.
[27] *Id.* at ¶40.
[28] *Id.* at ¶40.
[29] *Id.* at ¶31.
[30] D.I. 69, Ex. B at 100:3-24.

4

receive the email to report to the Salisbury store because the Dover stores computers "were not acting right."[31]  Filippone contacted her at the Dover store, and inquired as to why she failed to appear at the Salisbury store.[32]  After a brief conversation, it was decided plaintiff would report to the Salisbury store the next day.[33]  When she reported on March 10, 2008, she was instructed to observe the inventory process, including the people involved, because an outside agency was assisting with the inventory.[34]

At some point, plaintiff and Dayton got into a verbal altercation. [35]  According to plaintiff, Dayton asked plaintiff to follow her to the receiving area,[36] and directed plaintiff to sit at a table and monitor the inventory via a closed circuit television.[37]  When plaintiff inquired whether this was the standard procedure for loss prevention managers during inventory, Dayton started yelling at plaintiff,[38] and then left.  Thereafter, Filippone called plaintiff, and yelled at her to leave the store.[39]  Plaintiff relates Filippone said "I want you out of the building, you could put your keys on the desk when you get back to your building and leave, your [store coach] does not even want you in your own building."[40]  While returning to the Dover store, Filippone contacted plaintiff again, and told her to return to work the next day.  Despite plaintiff asking Filippone to review the CCTV

---

[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.* at 101:11-18.
[35] D.I. 81 at 8.  Plaintiff states Dayton's "attitude was combatitive [sic], argumentitive [sic] based on her stress and failure to supervise the scheduling . . . [and] have the proper amount of employees on staff the day of the inventory." *Id.*
[36] D.I. 69, Ex. B at 11.
[37] *Id.*
[38] *Id.*
[39] *Id.* at 106:2-107:17.
[40] *Id.*  at 11.

tapes,[41] he refused.[42]   Plaintiff maintains the conduct of Dayton and Filipone constitutes

discrimination because:

> First of all, I was the only female – and not only that, the only black female
> there.  And this white female is going to segregate me away from the
> whole process and leave just the males there where most of the
> population of the people doing the inventory is females, which is greatly a
> messed up thing to do when you are dealing with an organization with all
> these outside people in your area.
> She, [Dayton,] disrespected me.  She disrespected me and discriminated
> and segregated me.  He, [Filippone,] on the other hand, did as well
> because he was suppose to pull that tape . . .[43]

Plaintiff describes other events as discriminatory, including an email from

Thompson in which he stated:  "you can go this alone if you want, but if you want my

help, then humble yourself just enough, learn and move forward."[44]  Another incident

described in her deposition was a comment by Lyon,  "[w]ell, we want Charles back

because it's better if a man is here."[45]  In an undated email, plaintiff wrote to Thompson

claiming Lyon yelled at her, called her stupid, and questioned her work.[46]  Plaintiff also

accuses Bachus, who allegedly stated that since she was female, "[w]e don't have to

listen to you.  You don't even have your certification."[47]  In  another undated email sent

to esmit96@searshc.com, plaintiff describes Bachus' tone of voice as aggressive

constituting a pattern of disrepect.[48]

Plaintiff describes other incidents of alleged discrimination because she tried to

---

[41] *Id.*
[42] *Id.* at 106:5-15.
[43] *Id.* at 107:9-20.  Plaintiff argues this situation reveals defendants' discrimination against her because she was assigned to an isolate post disproportionately more than a male.  D.I. 1 at ¶31.
[44] *Id.* at 124:2-4.
[45] *Id.*  at 171:10-172:19.
[46] D.I. 81 at Ex. 2.
[47] D.I. 69, Ex. B at 170:2-12.
[48] D.I. 81 at Ex. 2.  No other evidence has been proffered to support Bachus' alleged pattern of disrespect.

enforce defendants' procedures, for example, the "Cash and Pick up Procedures."[49]

Thompson trained plaintiff to "escort a Manager to pickup a cash and [have loss

prevention] . . . sign the bag that they were present,"[50] which she felt conflicted with

defendants' written procedure, and so advised Thompson.[51]  Thompson subsequently

sent plaintiff a series of emails regarding the cash pick procedures,[52] which she claims

were discriminatory because he acted like she was trying to change the rules.[53]  She

also maintains Thompson's behavior was discriminatory

> because while [Thompson] was in the same position as [plaintiff] as a loss
> prevention manager in Dover, he violated all these procedures.  And now
> that I'm – a female in that position, he has been working to get back into
> that position for a long period of time.[54]

During her deposition, plaintiff identified other purportedly discriminatory emails,

including one from Thompson which stated:

> I am more than willing to help with any problems that you may have
> concerning loss prevention issues and you, on the other hand, have to be
> more relaxed and open-minded to the way things are done here at sears.[55]

According to plaintiff, Thompson's comment is discriminatory because by using the term

"done here," he was "saying because I am a female worker in [Thompson's] position

that [he] worked that I am suppose to go along with this men program?"[56]  In another

---

[49] *Id.* at 9-10.  The issue of the cash pickup procedures occurred on or about April 2008.  D.I. 69 at 5.
[50] *Id.*
[51] D.I. 69, Ex. B at 117:24-118:17.
[52] *Id.* at 120:16-23. The emails are dated April 15 and 16, 2008. D.I. 69, Ex. F at Ex. 2.
[53] *Id.* at 121:7-9.
[54] *Id.* at 121:14-19.
[55] *Id.* at 122:2-6.
[56] *Id.* at 122:11-14.  Plaintiff also contends Thompson's remark constituted racial discrimination because "although he is black and I am black, though I'm mixed, but I am still black –- there is discrimination within race as well," since he "has a thing for white women where he doesn't like black women."  She further argues Thompson's emails are discriminatory because he calls her defiant, by

example, plaintiff reports Thompson advised her to "wing it" when doing audits and he indicated that "he doesn't put the truth."[57]  She argues Thompson's training was discriminatory since his approach was contrary to defendants' procedures.[58]

According to plaintiff, Thompson reported her to Filippone for questioning procedures.[59]  She claims she contacted human resources after Filippone threatened to fire her.[60]  She also maintains because of her complaint to human resources, of which Filippone was aware, he canceled the next loss prevention coaches' meeting, and "set up numerous task [sic] for Plaintiff to complete to delay the faxed copy of the complaint to human resources in a timely fashion."[61]

On or about April 18, 2008, Filippone's supervisor, Adam Ostrowsky ("Ostrowsky"), divisional loss prevention manager, was notified by human resources of plaintiff's complaint.[62]  Ostrowsky began his investigation four days later on April 22, 2008,[63] by interviewing Filippone, who denied any discrimination towards plaintiff,[64] as well as interviewing plaintiff.[65]  According to Ostrowsky, plaintiff agreed to provide a written statement of the alleged discriminatory conduct.[66]  About a week later on April 28, 2008, Ostrowsky forwarded a letter to remind plaintiff to provide a written

---

writing "'[y]ou should tone it way down,' but he puts it in big letters." *Id.* at 122:22-123:20.
    [57] *Id.* at 131:10-12.
    [58] *Id.* at 131:14-17.
    [59] D.I. 81 at 10.
    [60] *Id.*  Plaintiff states she filed the complaint with human resources on April 15, 2008. D.I. 69, Ex. B at 199:8-21.
    [61] D.I. 81 at 10.
    [62] D.I. 69 at 5.
    [63] *Id.* at 6.
    [64] *Id.* at 6.
    [65] *Id.* at 6.
    [66] *Id.*, Ex. G at ¶8.  Per Ostrowsky, plaintiff agreed to provide the statement the next day. *Id.*

statement.[67]  On April 29, 2008, he told plaintiff that "we take complaints of

discrimination very seriously . . . [and wanted to] ensure that the appropriate actions are

taken."[68]  On May 5, 2008, plaintiff provided her statement to Ostrowsky,[69] who also

obtained written statements from P.J. Glordeno, a loss prevention coach, and Dayton.[70]

Based upon his investigation, Ostrowsky concluded plaintiff's claims of discrimination

were unfounded.[71]

One of plaintiff' responsibilities during her employ with defendants was to

conduct safety meetings.[72]  According to Filippone, in March 2008, he reminded plaintiff

to input the status of the safety meeting.[73]  In April 2008, Filippone again reminded her

to input the status of the safety meeting.[74]  On May 1, 2008, plaintiff told Filippone that

the safety meeting was completed on April 30, 2008.[75]  On May 2, 2008, Thompson

reviewed her safety meeting minutes.[76]  The minutes revealed more associates

attended the meeting than as plaintiff previously indicated.[77]  Thompson informed

Nicholas Glaze ("Glaze"), the store coach, about this discrepancy.[78]  Glaze consulted

---

[67] *Id.* at Ex. 2.
[68] *Id.* at Ex. 3
[69] D.I. 69 at 7.  Plaintiff's statement is found at D.I. 69, Ex. B. as Scott 11.  Therein, she makes no reference to race or gender discrimination by any employee or manager of defendants.  She asserts Filippone "created a hostile work environment" by threatening to fire her because of her problems with Thompson, loss prevention coach P.J. Glordeno, and Dayton.
[70] *Id.* at Ex. G at ¶13.
[71] *Id.* at 7.
[72] *Id.*, Ex. C at ¶3.  Other duties included:  performing safety audits and cash controls, and implementing various loss prevention procedures.
[73] *Id.* at ¶¶ 22-23; *id.*, Ex. C at Ex. 1.
[74] *Id.* at ¶¶ 24-25; *Id.*, Ex. C at Ex. 2.
[75] *Id.* at 9.
[76] *Id.*
[77] *Id.*, Ex. F at ¶ 12.
[78] *Id.* at 9.

with human resources,[79] and then conducted an investigation,[80] which included interviewing two associates, Mayra Burgos and Barbara Layton, who reported only three or four associates attending the meeting.[81]  As a result, on May 8, 2008, Glaze convened a meeting with plaintiff, Filippone, and April Appenzeller, manager of lawn and garden.[82]  At this meeting, plaintiff admitted the safety meeting did not last thirty minutes as reported in her meeting minutes,[83] and "not all of the associates were present at the same time, as she indicated . . ."[84]  Filippone requested she provide a written statement "regarding her position on the circumstances of the safety meeting."[85]  It was agreed  plaintiff was to complete this statement within the next twenty-four hours.[86]

On June 11, 2008, plaintiff was terminated from employment, for failure to cooperate in the investigation, which violated defendants' code of conduct policy.[87]

## II.   Discussion

### A.   Standard of Review

#### Summary Judgment

Summary judgment is appropriate if the "movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of

---

[79] *Id.*

[80] *Id.*

[81] *Id.*, Ex. D at ¶6, Ex. 1 (written statement of Myra Burgos), and Ex. 2 (written statement of Barbara Layton).

[82] *Id.* 69 at 9; D.I. 1 at ¶ 30; D.I. 69, Ex. C at ¶27.

[83] D.I. 69, Ex. C at ¶ 28; *id.*, Ex. D at ¶ 8.

[84] *Id.* at 10.

[85] *Id.*

[86] *Id.*  Plaintiff claims she submitted a written statement on May 9, 2008.  D.I. 1 at ¶ 30.  Both Filippone and Glaze, in their verified statement, confirm plaintiff never provided a written statement regarding the safety meeting.  *Id.* ; *id.*, Ex. C at ¶ 33; *id.*, Ex. D at ¶ 14.

[87] D.I. 69 at 10.

law."[88]  Once there has been adequate time for discovery, FED. R. CIV. P. 56(a)

mandates judgment against the party who "fails to make a sufficient showing to

establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial."[89]  When a party fails to make such a

showing, "there can be no 'genuine issue as to any material fact' since a complete

failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial."[90]  The moving party is therefore entitled

to judgment as a matter of law because "the nonmoving party has failed to make a

sufficient showing on an essential element of her case with respect to which she has the

burden of proof."[91]  A dispute of material fact exists where "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."[92]

    The moving party bears the initial burden of identifying portions of the record

which demonstrate the absence of a genuine issue of material fact.[93]  A party may move

for summary judgment with or without supporting affidavits.[94]  Therefore, "the burden on

the moving party may be discharged by 'showing' – that is, pointing out to the district

court – that there is an absence of evidence supporting the nonmoving party's case."[95]

    If the moving party demonstrates an absence of material fact, the nonmoving

party must then show "that the fact cannot be or is genuinely disputed" through

---

[88] FED. R. CIV. P. 56(a).
[89] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[90] *Id.* at 323.
[91] *Id.*
[92] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[93] *Celotex*, 477 U.S. at 323.
[94] *Id.*
[95] *Id.* at 325.

appropriate evidence.[96]  If the nonmoving party bears the burden of proof at trial, she

"must go beyond the pleadings in order to survive a motion for summary judgment,"[97]

and "may not rest upon the mere allegations or denials of [their] pleading[s], but must

set forth specific facts showing that there is a genuine issue for trial."[98]  At the summary

judgment stage, the court cannot "weigh the evidence and determine the truth of the

matter."[99]  "[T]here is no issue for trial unless there is sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party."[100]  The threshold inquiry,

therefore, is "determining whether there is a need for trial–whether, in other words, there

are any genuine factual issues that properly can be resolved only by a finder of fact

because they may reasonably be resolved in favor of either party."[101]

### Pro Se Litigant

In analyzing this motion, the court is mindful of the more liberal approach

afforded pro se litigants; however, pro se litigants are required to follow rules of

procedure and substantive law.[102]  Thus, a pro se plaintiff "cannot manufacture a

genuine issue of material fact merely by making assertions in its legal memoranda."[103]

---

[96] FED. R. CIV. P. 56(c).
[97] *Yeager's Fuel, Inc. v. Pennsylvania Power & Light Co.*, 22 F.3d 1260, 1273 (3d Cir. 1994).
[98] *Anderson*, 477 U.S. at 248.
[99] *Id.* at 249.
[100] *Id.*
[101] *Id.* at 250.
[102] *McNeil v. United States*, 508 U.S. 106 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse the mistakes of those who proceed without counsel."); *Farretta v. California*, 422 U.S. 806, 834 n. 46 (1975) (finding pro se status is not a license to disregard procedural rules or substantive law).  This circuit has repeatedly adhered to Supreme Court precedent in that regard.  *See Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 567, 570 (3d Cir. 1996); *Lewis v. Williams*, C.A. No. 05-013-GMS, 2010 WL 2640188, at *3 (D. Del June 30, 2010) (proceeding as a pro se litigant does not give a party the right to "flagrantly disregard the Federal Rules of Civil Procedure in an effort to manipulate rulings in his favor"); *Thompson v. Target Stores*, 501 F. Supp. 2d 601, 604 (D. Del. 2007).
[103] *S.A. Empresa De Viacao Aerea Rio Grandense v. Walter Kiddle & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982) (citations omitted).

Nor can "[a] plaintiff . . . rely upon 'unsupported assertions, speculation, or conclusory allegations to avoid a motion for summary judgment.'"[104]

**B.    Analysis**

**The *McDonnell Douglas* Standard**

Claims of racial and gender discrimination and retaliation are analyzed under the three stage burden shifting framework established by the United States Supreme Court in *McDonnell Douglas v. Green.*[105]

In the first stage, a plaintiff must establish a prima facie case of discrimination.  If a plaintiff establishes a prima facie case, then the burden shifts in the second stage to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection."[106]  Lastly, "should the defendant carry this burden, the plaintiff must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but a pretext for discrimination."[107]  In order to survive summary judgment, a plaintiff must "either (i) discredit[ ] the [defendant's] proffered reasons . . ., or (ii) adduc[e] evidence . . . that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."[108]

**Analysis under *McDonnell Douglas* of Racial and Gender Discrimination**

In order to establish a prima facie case of race discrimination under Title VII, a

---

[104] *Longstreet v. Holy Spirit Hosp.*, 67 Fed. Appx. 123, 126 (3d. Cir. 2003) (quoting *Solomon v. Soc. of Auto. Eng'rs*, 41 Fed. Appx. 585, 586 (3d. Cir. 2002)).
[105]  411 U.S. 792 (1973).
[106] *Id.* at 802.
[107] *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999).
[108] *Torre v. Casio, Inc.*, 42 F.3d 825, 830 (3d Cir. 1994).

plaintiff must show:  1) she is a member of a protected class, 2) she was qualified for

the position; 3) she suffered an adverse employment action; 4) under circumstances

which give rise to an inference of unlawful discrimination.[109]  "The elements of a prima

facie case may vary depending on the facts and context of the particular situation."[110]

 Defendants argue plaintiff failed to establish a prima facie case because she

was not qualified, and there is no evidence that her termination occurred under

circumstances that give to rise to an inference of unlawful discrimination.  Plaintiff avers

in opposite.

Defendants' position on plaintiff's lack of qualifications is merely "because she

has not set forth any evidence that she was qualified for the position of loss prevention

manager with Sears."[111]  Beyond this bald comment, they fail to further elucidate, and

explain why her prior training and experience was insufficient for the position for which

she was hired.  That defendants hired her for the loss prevention position suggests they

initially felt she was qualified.

Plaintiff has shown she was qualified to be a loss prevention manager, as

evidenced by her twenty-two years of service as an officer of the City of New York,[112]

and her training in conflict resolution, use of force, report writing, including disciplinary

"injury, infractions, Interpersonal Personal Communications Skills, Fire Safety, Chemical

---

[109]*Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Geraci v. Moody-Tottrup, Intern., Inc.*, 82 F. 3d 578, 580-81 (3d Cir. 1996); *Molthan v. Temple Univ. Of Com. Sys. of Higher Ed.*, 778 F. 2d 955, 961-62 (3d Cir. 1985); *Jones*, 198 F.3d at 410-11.
[110] *Shah v. Bank of America*, 598 F. Supp. 2d., 596 604 (D. Del. 2009).
[111] D.I. 69 at 18.
[112] The court is unable to determine whether her position as an officer of the City of New York was as a police officer, correctional officer, or some other position, such as court bailiff.  Defendants have not contradicted her prior work history, nor elaborated on it.

Agents, Counts of Mass Production of Sentence, Detainees and Parolees inmates, Arrests, Discharges, Close Circuit Television, Computer Inputs and Discharges."[113] Absent any logical explanation by defendants regarding why plaintiff was not qualified for the position, the court finds she has present adequate evidence of possessing the required background, training and experience for the position for which she was hired.

Defendants further contend plaintiff fails to proffer "any evidence that gives rise to an inference of unlawful discrimination,"[114] relying on *Jones v. Sch. Dist. of Philadelphia*[115] and *Cannon v. Correctional Med. Serv.,*[116] since her only evidence is her allegations and deposition testimony, which are insufficient to support her claims of discrimination.[117]  In her answering brief, plaintiff responds by re-hashing the allegations contained in her complaint and described during her deposition.[118]

---

[113] *Id.* at 3.

[114] D.I. 69 at 18.

[115] 198 F.3d 403, 414 (3d Cir. 1999). ("[W]e point out that Jones makes numerous allegations in his affidavit which he predicates on nothing more than his beliefs without having actual knowledge of them.  In fact, a careful analysis of the record demonstrates that many of his allegations simply are not supported.")

[116] 726 F. Supp. 2d. 380, 391 (D. Del. 2010) ("Plaintiffs only evidence consists of her deposition testimony which, in itself, is mere speculation. . . . Plaintiff cannot rely on her uncorroborated and speculative deposition testimony regarding circumstances surrounding her . . . termination as the sole support for her claim.  Absent additional evidence, no reasonable jury could find that plaintiff was unlawfully . . . terminated based on her race.")

[117] D.I. 69 at 18.

[118] D.I. 81. Attached to her answering brief are the following eighteen exhibits:  Ex. 1) Thompson being wrong about security key training, and Glaze's failure to tag merchandise; Ex. 2) emails sent by her stating Lyons told her to "shut up,' and Bachus stating that he does not have to listen to her; Ex. 3) store not following safety lights procedure; Ex. 4) Glaze and April Appenzeller bypassing loss prevention standards (handwritten), an email to Thompson from plaintiff about CCTV cameras, and a manager entering the store at 5a.m.; Ex. 5) fire safety violations; Ex. 6) Aaron Wright's resignation; Ex. 7) Thompson's relationship with another associate, and resolution; Ex. 8) emails of Salisbury store and password issue; Ex. 9) Training modules completed by plaintiff, and emails describing her need for further training to be certified; Ex. 10) A unsworn statement from Mike Skibicki, former employee, about his knowledge of plaintiff's discharge. (The statement is typed and hand written with parts blacked out); Ex. 11) Unsworn statements from Cosimo Giordano, loss prevention coach, and Cindy Dayton; Ex. 12) plaintiff's subpoena in the matter of *Deborah Bouchard v. Sears Holding Corp.*, C.A. No. 07C-12-001 (RBY) (Del. Super. Ct. April 3, 2009); Ex. 13) Email from Thompson to plaintiff, in reference to her application of the cash pickup procedures, to "be more relaxed and open minded," and to "tone it way

After review the record and the parties' submissions, plaintiff is unable to establish the fourth prong of a prima facie case for race or gender discrimination, that is, there is no evidence of discrimination that would allow a jury to infer her termination was due to her race or gender.  Her sole evidence are allegations in her complaint, which she reiterates in her brief.  The Third Circuit, in *Solomon v. Soc. of Auto. Engineers*, has rejected such statements as insufficient to establish a prima facie case of discrimination, by holding that "a plaintiff cannot rely on unsupported assertions, speculations, or conclusory allegations to avoid a motion for summary judgment."[119]

The bases for her claims of race and gender discrimination are scattershot and illogical.  A number of situations where she alleges discrimination have no relationship to gender or race, for example, her disagreement with Thompson regarding cash pick up procedures, which she baldly claims as discriminatory merely because Thompson was "acting like" plaintiff was trying to change the rules.[120]  Another example on which she relies were Thompson's comments to "humble herself," and to "learn and move forward."[121]

Plaintiff also contends several events were discriminatory because others were

down;" Ex.14) Filippone canceling a meeting and an email from Joan Krause of human resources, informing Ostrowsky that plaintiff had opened a case "at 88sears;" Ex. 15) several unsworn statements from Glaze, Filippone, April Appenzellee, Barbara Layton of human resources, and Mayra Burgos; Ex. 16) her submissions to the State of Delaware Department of Labor, Division of Industrial Affairs, Office of Anti-Discrimination; Ex. 17) unsworn statement of Thompson; Ex. 18) email congratulating Pam Fetus on accepting the position of SLMCA Lead position at the Dover store (date redacted), and human resource logs concerning suspension of Plaintiff.

All the dates on emails have been blacked out on exhibits 1, 6, 14, and 18, and some the dates on emails have been blacked out in exhibits 9 and 13.

[119] *Solomon v. Society of Automotive Engineers*, 41 Fed. Appx. 585, 586 (3d Cir. 200).

[120] D.I. 69, Ex. B at 121:7-9.

[121] *Id.* at 124:2-4.

not following proper procedures.[122]   The procedures concerned security keys, safety light procedures, bypassing loss prevention standards, and fire safety violations.

Plaintiff's lack of evidence of unlawful discrimination continues where she claims Thompson's relationship with another associate as discriminatory.[123]   She fails to proffer, however, any evidence demonstrating how she either suffered an adverse employment action because of this relationship, or why Thompson's conduct was discriminatory toward her.   Although the associate was discharged, plaintiff presents no evidence, beyond her unsupported assumption, as to why that associate was terminated.   To the extent the associate's termination is somehow related to plaintiff's firing, the purported connection is, at best, tenuous.

Plaintiff contends that she and four other females in her department were denied certification after completing the required training modules.[124]   However, in an email to Filippone, she admits discussing computer problems with human resources which prevented completion of the training modules.[125]   This email demonstrates computer difficulties as the reason certifications were not timely completed.   Although plaintiff lists employee courses she completed, she does not address the requirements necessary to be certified.[126]   Instead, she merely alleges, absent any evidentiary basis, that she was discriminated against because she was not certified.[127]

---

[122] Examples are found in Ex. 1, 4, and 5.
[123] D.I. 81 at 6.
[124] *Id.* at 7.
[125] *Id.*, Ex. 9.  The date of this email has been redacted.
[126] *Id.*
[127] Thompson states plaintiff was not certified because she failed to complete "all of the on-line training required to be eligible for certification."  D.I. 69, Ex. F at ¶ 15 (verified statement of Charles Thompson).

17

Plaintiff additionally claims she was isolated from the inventory process at the

Salisbury store because of her race.  No evidence has been produced supporting this

bald statement.  Dayton confirms the Salisbury store was short staffed during inventory,

and asked plaintiff to assist "by monitoring and recording all merchandise that left the

stockroom."[128]  When specifically questioned about any job impact as a result of the

Salisbury store incident at deposition,[129] plaintiff responded she was disrespected[130]

because Filippone refused to review the CCTV tapes of her interaction with Dayton, and

Dayton required her sit at a desk and monitor inventory.[131]

Plaintiff also describes two incidents where coworkers spoke negatively towards

her.  In an undated email plaintiff directed to Thompson, she describes Lyon telling her

to "shut up" when she asked his assistance in locking up tractors.[132]  The second

incident, described in her deposition, is when Bachus, allegedly commented "[y]ou are a

female.  We don't have to listen to you.  You don't even have your certification."[133]  Her

support for this remark is an email she forwarded to esmit96@searshc.com, wherein

she states Bachus's "aggression in the tone of his voice has become a pattern of

disrespect.  He refuses to remove merchandise from areas . . ."[134]  Such isolated

incidents of purported discrimination do not meet the requirements under Title VII.  The

---

[128] *Id.*, Ex. E at ¶ 7.

[129] *Id.*, Ex. B at 107:6-9.

[130] Throughout her deposition, plaintiff equates "disrespect" with "discrimination."  In *Afrassiabian v. ProCredit Holdings, Inc.*, the court noted that disrespectful comments or incidents "are not within the purview of Title VII . . . 'Title VII does not prohibit all verbal or physical harassment in the workplace . . . .'"  Civ. A. No. 98-4757, 1999 WL 605589, at *11,  n. 7 (E.D. Pa. Aug. 9, 1999) (quoting *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 79 (1998).

[131] D.I. 69, Ex. B at 107:9-108:4.  Plaintiff, in fact, suggests an alternate theory of Dayton's conduct as "[m]aybe she just didn't like me . . . ."

[132] D.I. 81, Ex. 2.

[133] D.I. 69, Ex. B at 170:4-7.

[134] D.I. 81, Ex. 2.

Supreme Court has clearly stated that Title VII is not a "general civility code,"[135] and Title VII "does not mandate a happy workplace."[136]

Since plaintiff's allegations and deposition testimony are mere speculation, uncorroborated regarding circumstances surrounding her with termination as the sole basis for discrimination, she fails to establish a prima facie case for gender and race discrimination.

Since plaintiff never satisfied her burden under the first prong of the *McDonnell Douglas* framework, the burden never shifted to defendants to state a non-discriminatory reason for her termination.  Assuming plaintiff satisfied her initial burden, she fails to meet the third prong of the analysis because there is no evidence that defendants' proffered reasons were a pretext for discrimination

Defendants' bases for plaintiff's termination are she was uncooperative, lacked teamwork and communication skills, refused to follow directions, failed to conduct a safety meeting, and fraudulently submitted paperwork.[137]  As noted herein, it is incumbent on plaintiff to either discredit defendants' proffered reasons or produce evidence that the motivation for her termination was discriminatory.  She fails to demonstrate either.[138]  In particular, she does not refute that her terminated was for any other reason than those proffered by defendants.  In her deposition, plaintiff testified that Glaze contacted her and advised she was being terminated "because [she] didn't

---

[135] *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1988).
[136] *Jensen v. Potter*, 435 F. 3d 444, 451 (3d Cir. 2006) *(overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v White*, 548 U.S. 53 (2006)).
[137] D.I. 69 at 22-24.
[138] Again, plaintiff points to unsubstantiated and conclusory beliefs in her complaint and brief.

complete the investigation . . ."[139]  Plaintiff does not refute this statement.

Because plaintiff is unable to show that her termination was pretextual, she does

not satisfy her burden under the third stage of the *McDonnell Douglas* framework

Therefore, defendants motion for summary judgment is granted with respect to

race and gender discrimination under Title VII.

### *McDonnell Douglas* Analysis of Retaliation under Title VII

Retaliation under Title VII employs the prevoiously mentioned three prongs of the

*McDonnell Douglas* analysis for race and gender discrimination.[140]  Retaliation under

Title VII:

> prohibits employers from retaliating against employees who have "made a
> charge . . . or participated in any manner in an investigation, proceeding,
> or hearing " under Title VII.[141]  In order to establish a *prima facie* case of
> retaliation, plaintiff must establish by a preponderance of the evidence
> that: (1) she is engaged in a protected activity; (2) that defendant took an
> adverse employment action against her; and (3) that a causal link exist
> between the protected activity and the adverse action.[142]

For a plaintiff to demonstrate a prima facie case of retaliation, she must initially

establish she engaged in a protected activity.  Under Title VII, a protected activity is

when an employee opposes an unlawful gender discrimination practice under Title VII or

"[the employee] has made a charge, testified, assisted, or participated in any manner in

an investigation, proceeding, or hearing under [42 U.S.C. § 2000e-3(a)]."[143]  "Whether

the employee opposes or participates in a proceeding against the employer's activity,

---

[139] D.I. 69, Ex. B at 155:12-156:9.
[140] *See Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006).
[141] See 42 U.S.C. § 2000e-3(a).
[142] *Ebert v. Office of Info. Sys.*, CA. No. 97-530-SLR, 1999 WL 588294, at *7 (D. Del. July 28, 1999).
[143] 42 U.S.C. § 2000e-3(a).

the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII."[144]   Stated differently, "if no reasonable person could have believed that the underlying incident complained about constituted unlawful discrimination, then the complaint is not protected."[145]

In the present case, plaintiff states the protected activity was reporting alleged discrimination to human resources and other managers.[146]   As previously decided, the activities complained did not constitute unlawful discrimination because they primarily concerned:  1) others not following work related procedures; 2) actions concerning third parties, Thompson and his relationships; and 3) subjectively viewing every comment made to her as being discriminatory.

There is no objective basis that the prior discussed behavior constitutes discrimination under Title VII, and therefore, plaintiff is unable to establish a prima facie case of retaliation.  She offers no evidence, other than her unsupported subjective testimony, to support the claim that the underlying activities complained operate as discrimination.

Alternatively, assuming plaintiff met the initial prong for the prima facie analysis of retaliation, she has not shown defendants' reasons for her termination are pretextual, in light of her total lack of evidence in this regard.[147]   Therefore, because plaintiff is

---

[144] *Moore*, 461 F. 3d at 341(citing *Clark County v. Breeden*, 532 U.S. 268, 271 (2001)).
[145] *Wilkerson v. New Media Tech. Charter. Sch., Inc.*, 533 F.3d 315, 322 (3d Cir. 2008).
[146] D.I. 1 at ¶ 52.
[147] Exhibit 5 attached to plaintiff's brief contains several emails between Filippone, Anthony Nass, Glaze, and Ostrowsky which arguable suggests she may have been terminated because of her requests to OSHA, the health inspector, the fire marshall, and the asbestos inspector to investigate the Dover store for possible safety violations.  Even based on this assumption, however, a claim of retaliation under Title VII is not sustained because the animus for her termination was not due to race or gender.

unable to carry her burden under the *McDonnell Douglas* framework, summary

judgment is granted for defendants on the claim of retaliation.

### Hostile Work Environment

For a hostile work environment action, "a plaintiff must establish 'by the totality of

the circumstances, the existence of a hostile or abusive working environment which is

severe enough to affect the psychological stability of a minority employee.'"[148]  An

environment is "'sufficiently severe or pervasive [when it] alter[s] the conditions of [the

plaintiff's] employment and create[s] an abusive working environment.'"[149]

For a hostile work environment claim, a plaintiff must establish five elements:  1)

she suffered intentional discrimination because of her gender or race; 2) the

discrimination was severe or pervasive; 3) the discrimination detrimentally affected the

plaintiff; 4) the discrimination would detrimentally affect a reasonable person in like

circumstances; and 5) the existence of *respondent superior* liability.[150]

The Supreme Court has clearly stated Title VII does not operated as a "general

civility code,"[151] nor "mandate a happy workplace."[152]  "[S]imple teasing, offhand

comments, [ ] isolated incidents (unless extremely serious),"[153] "[o]ccasional insults, . . .

or episodic instances of ridicule are not enough; they do not 'permeate' the workplace

---

[148] *Andrews v.City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990) (quoting *Vance v. Southern Bell Tel. And Tel. Co.*, 863 F. 2d 1503, 1510 (11th Cir. 1989)), *superseded by statute on other grounds* 42 U.S.C. §§ 1981, 2000e et seq. (1991).

[149] *Mandel v. M & Q Packaging Corp.*, 706 F. 3d 157, 167 (3d Cir. 2013) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

[150] *Mandel*, 706 F. 3d at 167; *Andrews*, 895 F.2d at 1482; *Subh v. Wal-Mart Stores, Inc.*, C.A. No. 08-410-SLR-LPS, 2009 WL 4015649, at *8 (D. Del. Nov. 19, 2009).

[151] *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1988).

[152] *Jensen v. Potter*, 435 F. 3d 444, 451 (3d Cir. 2006) *(*overruled on other grounds by *Burlington N. & Santa Fe Ry. Co. v White*, 548 U.S. 53 (2006)).

[153] *Faragher*, 524 U.S. at 778.

and change the very nature of the plaintiff's employment."[154]

The only conduct relevant to a claim of hostile work environment are the comment by Lyon wanting Thompson back "because it's better if a man is here;"[155] plaintiff's accusation in an undated email to Thompson stating Lyon yelled at her, called her stupid, and questioned her work;[156] the Bachus remarks suggesting because plaintiff is female and does not have her certificate, he could ignore her;[157] and plaintiff's undated email sent to esmit96@searshc.com attributing an aggressive tone by Bachus as evidencing pattern of disrespect.[158]

"Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's purview."[159]  The behavior described by plaintiff are isolated incidents.  She has not produced any other evidence, other than her subjective belief, to cause a reasonable person to find her work environment hostile or abusive.  Further, two of the incidents on which plaintiff relies, that is, Lyon yelling and calling her stupid and a purportedly aggressive tone of voice by Bachus, are not remotely related to either gender or race.

These four relatively minor and episodic incidents are insufficient to demonstrate a hostile work environment claim, and as a result, judgment in favor of defendants is entered on this claim.

---

[154] *Jensen*, 435 F. 3d at 451.
[155] *Id.* at 171:10-172:19.
[156] D.I. 81 at Ex. 2.
[157] D.I. 69, Ex. B at 170:2-12.
[158] D.I. 81 at Ex. 2.
[159] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

## IV.  Order and Recommended Disposition

IT IS RECOMMENDED that defendants' motion for summary judgment (D.I. 68) be GRANTED.

IT IS FURTHER RECOMMENDED plaintiff's motion for an extension (D.I. 79) in violation of the Memorandum Order of December 28, 2012 (D.I. 78) is denied as MOOT.

Pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72 (b)(1), and D. DEL. LR 72.1, any objections to the Report and Recommendation shall be filed within fourteen (14) days limited to ten (10) pages after being served with the same.  Any response shall be limited to ten (10) pages.[160]

The parties are directed to the Court's Standing Order in Pro Se Matters for Objections Filed under FED. R. CIV. P. 72 dated November 16, 2009, a copy of which is found on the Court's website (www.ded.uscourts.gov.)

A copy of the Report and Recommendation and this Order was mailed to Collette Jacques-Scott on June 13, 2012.


Date: June 13, 2013                      /s/ Mary Pat Thynge
                                         UNITED STATES MAGISTRATE JUDGE

---

[160] FED. R. CIV. P. 72(b)(2).